## TABLE OF CONTENTS

PAGE

ARGUMENT………………………………………………………………………………...1

PART I

PLAINTIFFS HAVE ALLEGED WRONGFUL CONDUCT
SPECIFICALLY INTENDED TO INTEREFERE WITH
THEIR FAMILY RELATIONSHIPS PER 42 U.S.C. §
1983………………………………………………………………………….2

PART II

DEFENDANT IS NOT ENTITLED TO QUALIFIED
IMMUNITY ON THE RIGHT TO FAMILIAL ASSOCIATION
CLAIM……………………………………………………………………….8

PART III

DEFFENDANT DETECTIVE INVESTIGATOR PNOZI IS NOT
ENTITLED TO ABSOLUTE IMMUNITY……………………………………..11

PART IV

THE STATE LAW CLAIM FOR INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS IS NOT BARRED BY STATUTES OF
LIMITATIONS AS IT WOULD NOT BE IN THE INTEREST OF JUSTICE
AND THE STATE LAW CLAIM FOR NEGLIGENT INFLICTION OF
EMOITIONAL DISTRESS IS NOT BARRED BY STATUTES OF
LIMITATIONS AS IT WAS FILED TIMELY PER THE RELATION-BACK
DOCTRINE………………………………………………………………...13

PART IV

PLAINTIFF HAS SUFFICIENTLY PLEAD THE ELEMENTS OF
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS………………..16

PART VI

PLAINTIFFS HAVE SUFFICIENTLY PLEAD THE ELEMENTS OF
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS…………………..19

PART VII

PLAINTIFFS' CLAIM FOR NEGLIGENT HIRING, TRAINING, AND
SUPERVISION SHOULD NOT BE DISMISSED……………………………..21

PART VIII

COURT SHOULD NOT DECLINE TO EXERCISE SUPPPLEMENTAL
JURISDICTION AS TO THE STATE LAW CLAIMS………………………...23

CONCLUSION………………………………………………………………………….24

## TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                                                    <u>**PAGES**</u>

Anderson v. Creighton
483 U.S. 635 (U.S. 1987)………………………………………...…….……...………10

Anthony v. City of New York
339 F.3d 129 (2d Cir. 2003)……………………………………..………………...…2, 3

Baker v. Dorfman
239 F.3d 415 (2d Cir. 2000)…………………………………………..……….……….19

Braverman v. Monterey Operating Corp.
246 A.D. 735, 283 N.Y.S. 874 (2d Dept. 1935)…………………………..…….…...…….13

Buckley v. Fitzsimmons
509 U.S. 259, 270, 113 S.Ct. 2606, 125 L.Ed.2d 209…………………………………...11

Buran v. Coupal
87 N.Y.2d 173, 177, 638 N.Y.S.2d 405, 661 N.E.2d 978 [1995]………....……………..14, 16

Burns v. Reed
500 U.S. 478, 493–495, 111 S.Ct. 1934, 114 L.Ed.2d 547………………………………..11

Chamber Industries, Inc. v. 71 Grand Liquor Corp.
128 A.D.2d 825, 513 N.Y.S.2d 747 (2d Dept. 1987)………..………………………..……..13

Chanko v. American Broadcasting Cos., Inc.
27 N.Y.3d 46 (N.Y. 2016)………………...………………….……….…………..…………..18

Claude H. v. County of Oneida
214 A.D.2d 964, 965, 626 N.Y.S.2d…………………………………………………………11

Constable v. Matie
145 A.D.2d 987, 536 N.Y.S.2d 357 (4th Dept. 1988)…………………………..………13

County of Sacramento v. Lewis
23 U.S. 833, 140 L. Ed. 2d 1043, 118 S.Ct. 1708 (1998)………………………..…...………3

Cunningham v. State of New York
71 A.D.2d 181, 182, 422 N.Y.S.2d 497……………………………………………………11

Dawkins v. Williams
413 F.Supp.2d 161 (N.D.N.Y. 2006)………………………………………..……14, 15

Doninger v. Neihoff
642 F.3d 334 (2d Cir. 2011)………………………………………………………...……...9

Duffy v. Horton Mem. Hosp.
66 N.Y.2d 473, 477, 497 N.Y.S.2d 890, 488 N.E.2d 820 [1985]……………..………..…….15

Dusenbury v. City of New York
1999 U.S. Dist. LEXIS 5039 (S.D.N.Y. Apr. 8, 1999)……………………………………6

Ferrara v. Galluchio
5 N.Y.2d 16 (1958)………………………………………………………………...……19

Giambrone v. Kings Harbor Multicare Ctr.
104 A.D.3d 546, 961 N.Y.S.2d 157 [1st Dept.2013]……………………………………14

Gluckman v. American Airlines
844 F.Supp. 151 (S.D.N.Y. 1994)…………………………………………………...……..16

Gonzalez v. City of New York
133 A.D.3d 65, 67 (1ˢᵗ Dept. 2015)………………………………………..…………21, 22

Gorman v. Rensselaer County
910 F.3d 40  (2d Cir. 2018)……………………………………………...…….3, 4, 10

Henbest & Morrisy v. W.H.Ins. Agency
259 A.D.2d 829, 686 N.Y.S.2d 207…………………………………..…………...……16, 19

Hodgers-Durgin v. De La Vina
199 F.3d 1037 (9ᵗʰ Cir. 1999)…………………………………………………………..3

Howell v. New York Post Co.
81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699………………………..……………16, 17

Imbler v. Pachtman
424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128……………………………………11

Jacobson v. McNeil Consumer & Specialty Pharms.
68 A.D.3d 652, 891 N.Y.S.2d 387 [1st Dept.2009]…………………………………...……16

Johnson v. Kings County Dist. Attorney's Off.
308 A.D.2d 278, 285, 763 N.Y.S.2d 635……………………………………………...11

Johnson v. State
37 N.Y.2d 378, 372 N.Y.S.2d 638, 334 N.E.2d 590 (1975)…………………..………...……19, 20

Kelson v. City of Springfield
767 F.2d 651 (9th Cir. 1985) ……………………………………..…………………..……2

Kirchner v. Cty. of Niagara
107 A.D.3d 1620, 1623, 969 N.Y.S.2d 277, 282 (2013)……………………………………11, 12

Klein v. Metropolitan Child Servs., Inc.
100 A.D.3d 708, 954 N.Y.S.2d 559……………………………………….……………….…...16, 18

Marmelstein v. Kehillat New Hempstead: Rav Aron Jofen Community Synagogue
11 N.Y.3d 15, 862 N.Y.S.2d 311, 892 N.E.2d 375……………………………..…………….…..16, 17

Marshall v. Sullivan
105 F.3d 47 (2d Cir. 1996)……………………………………………………...…………...10, 11

Martin v. Citibank, N.A.
762 F.2d 212 (2d Cir. 1985)………………………………………………….……...…..18

McCray v. City of New York
2007 U.S. Dist. LEXIS 90875 (S.D.N.Y. 2007)……………………………………………….6

McKenna v. Wright
386 F.3d 432 (2d Cir. 2004)………………………………………………..…………….…9

Monroe v. Pape
365 U.S. 167 (1961)……………………………………………….……………………….………10

Murray v. Matusiak
247 A.D.2d 303, 669 N.Y.S.2d 278 (1st Dept. 1998)………………..…………………….…….13

O'Halloran v. Metropolitan Transp. Authority
154 A.D.3d 83, 60 N.Y.S.3d 128, 131 (N.Y. App. Div. 2017)……………….………………15

Patel v. Searles
305 F.3d 130 (2d Cir. 2002)……………………………………………….……3, 4, 5, 6, 9, 10, 18

Pearson v. Callahan
555 U.S. 223 (2009)……………………………………….……..……..…………………8, 9

Perry v. Valley Cottage Animal Hosp.
261 A.D.2d 522 (2d Dept. 1999)………………………………………….………………..21

Pisano v. Tupper
177 A.D.2d 886, 576 N.Y.S.2d 646 (3d Dept. 1991)…………………..…..…………………13

Quilloin v. Walcott
434 U.S. 246, 54 L.Ed.2d 511, 98 S.Ct. 549 (1978)…………………………..…………......…..2

Rawson v. Austin
49 A.D.2d 803, 373 N.Y.S.2d 241 (4ᵗʰ Dept. 1975)………………………....……………..13

Rivera v. City of N.Y.
392 F.Supp.2d 644 (S.D.N.Y. 2005)…………………………………………....………....18

Roberts v. United States Jaycees
468 U.S. 609, 82 L.Ed.2d 462, 104 S.Ct. 3244 (1984)………………………..……....2, 3, 9

Rodrigues v. City of New York
193 A.D.2d 79, 85, 602 N.Y.S.2d 337……………………………………………….…....11

Rovello v. Orofino Realty Co.
40 N.Y.2d 633, 389 N.Y.S.2d 314, 357 N.E.2d 970………………………….…….…..16, 19

Santosky v. Kramer
455 U.S. 745, 753, 71 L.Ed.2d 599, 102 S.Ct. 1388 (1982)…………………………………2

Schupak, Rosenfeld and Fichsbein v. Campanelli Industries, Inc.
51 A.D.2d 699, 380 N.Y.S.2d 3 (1ˢᵗ Dept. 1976)…………………………………………...13

Smith v. City of Fontana
818 F.2d 1411 (9thCir. 1987)……………………………………………..…………….2, 3

Taggart v. Costabile
131 A.D.3d 243, 14 N.Y.S.3d 388……………………………………………....……16, 17

Taravella v. Town of Wolcott
599 F.3d 129 (2d Cir. 2010)…………………………………………………………..9

Valenci v. Sung Lee
316 F.3d 299, 305 (2d Cir. 2003)………………………………………………....23

Valentino v. County of Tompkins
284 A.D.2d 898 (3ʳᵈ Dept. 2001)……………………………….…….…..…………16, 19

Wagner v. Swarts
827 F. Supp. 2d 85, 101 (N.D.N.Y. 2011), aff'd, 489 F.App'x 500 (2d Cir. 2012)…………….9

White v. Frank
855 F.2d 956, 961 (2d Cir. 1988)……………………………………………….…………10

Young v. Suffolk County
705 F.Supp.2d 183 (E.D.N.Y. 2010)………………………………….……………...…13, 14

Zahrey v. Coffee
221 F.3d 342, 355 (2d Cir. 2000)…………………………………………………………..10


**STATUTES**

28 U.S.C. § 1367(c)………………………………………………………………………...23

42 U.S.C. § 1983……………………………………………………………….2, 4, 6, 7, 10, 23

CPLR 203(f) …………………………………………………...………......…………14

CPLR §3211(a)(7) ……………………………………………………………..……16, 19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BRITTANY HAMILTON, RICHETTA GREENE AND
DAVONE GREENE,

                                    Plaintiffs,

                -against-

THE CITY OF NEW YORK, DET. LOUIS SCARCELLA,
DET. FRANK DELUISA, AND INV. JOSEPH PONZI

                                    Defendants.

-------------------------------------------------------------------X

**AFFIRMATION
IN OPPOSITION
TO DEFENDANTS'
THE CITY OF NEW
YORK, DET.
FRANK
DELOUISA, AND
INV. JOESPH
PONZI MOTION
TO DISMISS**

Docket No.: 17 CV
6384 (CBA) (SJB)

        CARY LONDON, ESQ., an attorney duly admitted to practice before the courts of this State,

and a member of Caitlin Robin & Associates, attorneys for Plaintiffs, affirms the following to be true

under penalty of perjury:

        1.      I am fully familiar with all the pleadings and proceedings had in this matter previously

and make this affirmation in opposition to the motion by Defendants, THE CITY OF NEW YORK,

DET. FRANK DELOUISA and INV.JOSEPH PONZI, for an order dismissing Plaintiffs' Amended

Complaint.

        2.      Plaintiffs hereby incorporate by reference the arguments made in Plaintiffs' Affirmation

in Opposition to Defendant, Louis Scarcella's Motion to Dismiss.

        3.      This matter is a civil rights and state claims action brought by Plaintiffs, BRITTANY

HAMILTON, RICHETTA GREENE AND DAVONE GREENE, against Defendants, DET. LOUIS

SCARCELLA, DET. FRANK DELOUISA AND INV. JOSEPH PONZI, THE CITY OF NEW

YORK stemming from the wrongful arrest, conviction and incarceration of Derrick Hamilton.

                                            1

**PART I**

PLAINTIFFS HAVE ALLEGED WRONGFUL CONDUCT SPECIFICALLY INTENDED TO
INTEREFERE WITH THEIR FAMILY RELATIONSHIPS PER 42 U.S.C. § 1983

4.      Defendants' removal of Derrick Hamilton from Plaintiffs' lives by maliciously and
wrongfully arresting, convicting and incarcerating him was a dire violation of their well-recognized
"right under the Due Process Clause to remain together without the coercive influence of the
awesome power of state." Anthony v. City of New York, 339 F.3d 129, 142-43 (2d Cir. 2003).

5.      Defendants' unconstitutional interference with their substantive due process right of
familial association precluded Plaintiffs' "freedom of personal choice in matters of family life[,] one
of the liberties protected by the Due Process Clause of the Fourteenth Amendment." Quillon v.
Walcott, 434 U.S. 246, 255, 54 L.Ed.2d 511, 98 S.Ct. 549 (1978). In Roberts v. United States
Jaycees, 468 U.S. 609, 82 L.Ed.2d 462, 104 S.Ct. 3244 (1984), the Supreme Court explained the Bill
of Rights protects "certain kinds of highly personal relationships…from unjustified interference by
the State," Id. at 618. The Court in Roberts acknowledged that "the personal affiliations that
exemplify these considerations…are those that attend the creation and sustenance of family life…"
Id. at 619.

6.      As such, a parent has a "fundamental liberty interest" in "the companionship and society
of his or her child" and "the state's interference with that liberty interest without due process of law
is remediable under [42 U.S.C. §] 1983." Kelson v. City of Springfield, 767 F.2d 651, 654-55 (9th
Cir. 1985) (citing Santosky v. Kramer, 455 U.S. 745, 753, 71 L.Ed.2d 599, 102 S.Ct. 1388 (1982)).
"This constitutional interest in familial companionship and society logically extends to protect
children from unwarranted state interference with their relationships with their parents." Smith v.

City of Fontana, 818 F.2d 1411, 1418 (9thCir. 1987) (overruled on other grounds by Hodgers-Durgin v. De La Vina, 199 F.3d 1037 (9th Cir. 1999)).

7.     There can be no doubt that the acts and omissions of Defendants that caused Derrick Hamilton to be separated from Plaintiffs were "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." Anthony, at 143 (2d Cir. N.Y. 2003). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore constitutional." County of Sacramento v. Lewis, 523 U.S. 833, 846, 140 L. Ed. 2d 1043, 118 S.Ct. 1708 (1998) (internal quotation marks omitted). Such conscience-shocking conduct can arise when it is intended to injure in some way unjustified by any government interest or because state officials acted with deliberate indifference that was so shocking under the circumstances." Id. at 849-50.

8.     Defendants, citing the Second Circuit in Patel v. Searles, acknowledge this Constitutional protection of familial relationships from unwanted governmental interference. (D.MOL at 6 (citing Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002)). Defendants argue, however, that the Plaintiffs' familial association claims must be dismissed because the actions of Defendants, while not denying their shocking, arbitrary and egregious nature, were not specifically intended to interfere with the family relationship. (D.MOL at 6-7 (citing Gorman v. Rensselaer County, 910 F.3d 40, 48 (2d Cir. 2018)). The Second Circuit's unequivocal statement in Patel made clear, however, that "this Circuit has never held that a challenged action must be directed at a protected relationship for it to infringe on the right to intimate association." Id. at 137. Indeed, the Second Circuit there noted that this "strict standard suggested by defendants…we do not believe finds support in Roberts or in any of our precedents..." Id. (emphasis added).

3

9.      The Defendant overly relies on <u>Gorman</u>, which held that the allegations of conduct of the defendant were insufficient to show they specifically intended to interfere with plaintiff's relationship with his sister. <u>Gorman</u>, 910 F.3d at 48 (2d Cir. 2018). However, <u>Gorman</u> has no relevant bearing to the case at hand. The sibling relationship in <u>Gorman</u>, between plaintiff and plaintiff's sister, deteriorated as a result of the defendant's romantic relationship with plaintiff's sister ending. <u>Id.</u> at 44. This case hinged on the statements made by defendant to plaintiff's sister during the course of the relationship, and the court found that "any impairment of the sibling relationship was at best the indirect and incidental result of [defendant]'s conduct." Id at 44 & 48. However, this is distinguishable from the case at hand the level of impairment to the family relationship differs substantially. In <u>Gorman</u>, the conduct of the defendant was only communications between the three parties accusing of infidelity and gossip. <u>Id.</u> at 44. Here, the Defendants engaged in conduct that led to the wrongful arrest and conviction of Derrick Hamilton, including the threatening and coercing of Jewel Smith to falsely identify Derrick Hamilton as the shooter in the death of Nathaniel Cash, continued threatening of Ms. Smith when she attempted to recant, confronting Plaintiffs with misleading information about Derrick Hamilton in an attempt to create mistrust and strain on the family relationship, intimidation of alibi witnesses to prevent their testifying at trial, and fabrication of evidence to discredit another witness. See **Exhibit A**, Amended Complaint. This conduct from the Defendants certainly rises above the "indirect and incidental result" of the defendant's conduct in <u>Gorman</u>, and shows the direct and specifically intended interference with the family relationship of Derrick Hamilton and the Plaintiffs.

10.      This case is similar to and should follow the holding in <u>Patel</u>. In <u>Patel</u>, the Court found the allegations sufficient to show that the defendant-officer's conduct "was intentionally directed at" plaintiff's family relationships because "the officers engaged in a misinformation campaign designed

'to create hostility and mistrust among the family members that would ultimately lead to false accusations against [Patel].'" Patel, 305 F.3d at 137. In Patel, a murder suspect brought a §1983 action against police chief and detective alleging violations of his constitutional right to intimate association. Following two months of police work into the death of the plaintiff's mother and sister, the detective had not uncovered sufficient evidence to arrest a suspect, so the detective began to concoct and disseminate false evidence about the plaintiff. Id. at 134. Defendants repeatedly alleged that Patel had committed the murders and even went as far as writing letters and fake confession letters to that end and submitting them to newspapers and family members. Id. Patel claimed the defendants' conduct resulted in complete ostracizing from the majority of his family and friends, and that he insisted that the defendants Searles and Swanson acted dishonestly and recklessly, leading to the complete destruction of his family and community life. Id. The Defendants used nearly identical methods as used in Patel, in order to "create hostility and mistrust among the family members that would ultimately lead to false accusations." Id. at 137. Defendants showed up at Richetta Greene's mothers home and blatantly disregarded Derrick Hamilton's Constitutional rights by informing family members that "Derrick Hamilton was a murderer, a threat, and could not be trusted." (Amended Complaint ¶15). "This ongoing intimidation was an intentional effort by the Detective and Investigator to intimidate the Plaintiff, deprive her of the right of her spousal relations, and also a means by which they could intentionally alienate the infant Davone Greene in an effort to secure coerced testimony. This conduct shocks the conscious and shows intentional conduct on behalf of these named defendants." (Amended Complaint ¶15). These are the exact sentiments the defendants included within the letter mailed to the plaintiff's wife in Patel. Id. at 137. Additionally, just as in Patel, the Defendants continued this misinformation campaign by coercing and threatening witnesses, fabricating evidence, and preventing witness testimony all in his effort to "create hostility

5

and mistrust among the family members that would ultimately lead to false accusations." Id. Thus, just as in Patel, the allegations against the Defendants are sufficient to show that the Defendants' conduct was intentionally directed at Derrick Hamilton's family in an effort to spread misinformation to create hostility and mistrust within the family to result in the wrongful conviction of Derrick Hamilton. Moreover, Defendants inaccurately claims that the Plaintiff failed to allege Plaintiffs suffered any impairments to their family relationships as a result of the Defendant's conduct. Plaintiff clearly states in the Amended Complaint that "due to the efforts of the defendants to secure the wrongful conviction, Mr. Hamilton became estranged from his children and his wife," that "Derrick's kids, Davone Greene and Brittany Hamilton, blamed Derrick for being in jail", and that they "resented Derrick" and "had no father growing up," while "Richetta Greene did not have a husband around, or a partner to raise her children." (Amended Complaint ¶¶22-26, 55). It is beyond comprehension that the Defendant has attempted to raise the argument that the allegations have not provided for any impairments to family relationships. Just as in Patel, due to the efforts of the Defendant to spread misinformation and intentionally target the family, the Plaintiffs suffered complete estrangement from Derrick Hamilton and loss of their rights to family relationships with their husband and father.

11.     Additionally, Defendants had extended opportunities to do better, but instead used those opportunities to perpetuate their truly shocking behavior, deliberately and consciously indifferent to Plaintiffs' needless suffering. Moreover, McCray v. City of New York, supports Plaintiffs' position that "deliberate indifference to their familial associations rights" is all that is required to state a claim in the wrongful imprisonment context. 2007 U.S. Dist. LEXIS 90875, at *96 (S.D.N.Y. 2007). In Dusenbury v. City of New York, a case involving the unlawful stop and subsequent use of force against a father, the court held that his children could amend the complaint to assert a §1983 familial

association claim even if they failed to establish that the state action was directly aimed at the parent-child relationship. 1999 U.S. Dist. LEXIS 5039 (S.D.N.Y. Apr. 8, 1999).

12.     In any event, contrary to Defendants' argument (D. MOL at 8), the Amended Complaint does identify specific, non-conclusory actions that were purposefully directed at the relationship of Plaintiffs with their husband and father, Derrick Hamilton, to cause them to doubt his innocence. (Amended Complaint at ¶¶63, 69, 75). Defendant's threatening and coercing Ms. Smith to identify Derrick Hamilton, specifically with threats of parole violations and taking her children away from her if she did not identify Derrick Hamilton as the shooter (Id. at ¶¶13, 32, 33); threatening Ms. Smith when she attempted to recant her grand jury testimony (Id. at ¶39);  improperly and intentionally informing Plaintiff, Richetta Greene, in the presence of Plaintiff, Davone Greene, that Derrick Hamilton was a murderer and dangerous in an effort to intentionally interfere with their familial relationship (Id. at ¶¶14-16, 35-36) and intimidating key witnesses who could provide an alibi for Derrick Hamilton to not testify (Id. at ¶¶18, 19, 37). The scheme and wrongful conduct of the Defendants was intentionally directed at familial relationship, in particular to malign Plaintiffs from Derrick Hamilton and alienate Plaintiffs from Derrick Hamilton during the investigation and incarceration.

13.     Further, this action is not time-barred despite Defendants' assertions. The statute of limitations did not begin running until the claims accrued on January 9, 2015, when Derrick Hamilton's conviction was vacated and the indictment against him was dismissed. Here, the Plaintiff's original Complaint was filed on November 02, 2017. See **Exhibit 'B'**. Given the three-year statute of limitations, (D.MOL. at 9), the statute of limitations would expire on January 9, 2018. Thus, the original Complaint was filed well within the three-year statute of limitations.

14.     Clearly these actions by the Defendants were intended to conceal from the entire world, including Plaintiffs, the true facts required to prove his innocence. Unlike the rest of the world, Plaintiffs' familial rights are protected from such an intrusion. Plaintiffs' have alleged conduct specifically intended to interfere with their family relationships that implicate their right to familial association. (Amended Complaint ¶¶ 13, 14, 15, 16, 18, 19, 22, 23, 24, 25, 26, 32, 33, 35, 36, 37, 55, 63, 69, 75). Accordingly, their claims for violation of their right to familial association must not be dismissed.

## PART II

### DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY ON THE RIGHT TO FAMILIAL ASSOCIATION CLAIM

15.     The Amended Complaint alleges that the Defendants knowingly coerced, incentivized, and threatened a witness into giving a false identification, continued pattern of threatening witness when attempted to recant, spread misinformation to Hamilton's family in an attempt to create distrust and hostility leading to arrest, intimidated alibi witnesses to prevent testimony at trial, and fabricated evidence to discredit another witness, resulting in plaintiffs' deprivation of familial relations with Derrick Hamilton. See Amended Complaint ¶¶ 13, 14, 15, 16, 18, 19, 32, 33, 35, 36, 37, 46). On these facts, the individual Defendant is not entitled to qualified immunity.

16.     "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citation and internal quotation marks omitted). The doctrine "balances two important interests- the need to hold public officials accountable when they exercise power irresponsibility and the need to shield officials from harassment, distraction, and liability when they perform their duties

reasonably." Id. Here, the Defendants did not perform their duties reasonably and as such, must be held accountable for exercising their powers irresponsibly.

17.     When defendants raise qualified immunity on a motion to dismiss, they "must accept the more stringent standard applicable to this procedural route." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004). At this stage, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." Id.

18.     There is a two-part qualified immunity inquiry: "whether the facts shown 'make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010)(quoting Pearson, 555 U.S. at 232). In determining whether a right qualifies as "clearly established", the Second Circuit "looks to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." Doninger v. Neihoff, 642 F.3d 334, 345 (2d Cir. 2011) (citation omitted). The Second Circuit confirmed that "at least a general right to intimate association has been clearly established since 1984 when Roberts was decided." Patel, 304 F.3d at 139. "[T]he conduct need not be previously deemed unlawful, but the unlawfulness, in light of pre-existing law…must be apparent." Wagner v. Swarts, 827 F. Supp. 2d 85, 101 (N.D.N.Y. 2011) (citation and internal quotations marks omitted), aff'd, 489 F.App'x 500 (2d Cir. 2012).

19.     In Patel, the Second Circuit confirmed that "at least the general right to intimate association has been clearly established since 1984 when Roberts was decided." Patel, 305 F.3d at 139. The circuit court in Patel found that "it would [not] be objectively reasonable for the police to engage in an extended public and private defamatory misinformation campaign to destroy a family,

hoping that those tactics might produce incriminating leads in a murder investigation." Id. at 140 (citation omitted). Thus, it was held that officers that intentionally direct their conduct at a plaintiff's familial relationship had no entitlement to qualified immunity. Id. Defendant, again, erroneously invokes Patel in an attempt to show that the Defendant's conduct "at best may have some indirect and incidental impact on plaintiffs' family relationships." (D. MOL at 11-12). However, as stated in Part I, supra, the Defendant engaged in the exact same misinformation campaign as the defendants in Patel. The spread of misinformation directed intentionally at Derrick Hamilton's family by the visit to their home, is the exact same information spread in Patel. Patel, 305 F.3d at 137. As the Defendants' conduct was intended to interfere with the family relationship it gives rise to a claim for violation of the right to familial association as found in Gorman. Gorman, 910 F.3d at 48. Thus, the Defendants are not entitled to qualified immunity.

20.    Additionally, for a constitutional right to be clearly established for the purpose of a qualified immunity defense, the precise conduct at issue need not previously have been ruled unlawful; but in light of pre-existing law the unlawfulness must be apparent. Anderson v. Creighton, 483 U.S. 635, 640 (U.S. 1987)(citations omitted). "It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government official." Zahrey v. Coffee, 221 F.3d 342, 355 (2d Cir. 2000) (citing White v. Frank, 855 F.2d 956, 961 (2d Cir. 1988)(other citations omitted). The Court in Zahrey found that right to have been clearly established in 1996, and by citation to White, it recognized that right had been established since at least 1988. Id. "[I]t was also then well established that for purposes of actions under section 1983…, a person is 'responsible for the natural consequences of his actions[.]'" Id. at 357 (quoting Monroe v. Pape, 365 U.S. 167, 187 (1961)).

21.     Here, as set forth in Point I, supra, Defendants caused Plaintiffs to be deprived of their well-established liberty interest in familial association with Derrick Hamilton based on false and fabricated evidence. See Id. at 351 (noting the "need to determine whether the deprivation of liberty may be considered legally cognizable result of the initial misconduct.") "Qualified immunity does not protect those who knowingly violate the law." Marshall v. Sullivan, 105 F.3d 47, 53-54 (2d Cir. 1996)(internal citations and quotations omitted).

22.     For the reasons stated above, the Defendants are not entitled to qualified immunity on Plaintiffs' claims for violation of their right to familial associations.

## **PART III**

### DEFNEDNAT DETECTIVE INVESTOGATOR PONZI IS NOT ENTITLED TO ABSOLUTE IMMUNITY

23.     Absolute immunity is only provided "for conduct of prosecutors that was 'intimately associated with the judicial phase of the criminal process'" (Buckley v. Fitzsimmons, 509 U.S. 259, 270, 113 S.Ct. 2606, 125 L.Ed.2d 209, quoting Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128; see Rodrigues v. City of New York, 193 A.D.2d 79, 85, 602 N.Y.S.2d 337), i.e., conduct that involves " 'initiating a prosecution and in presenting the State's case' " (Johnson v. Kings County Dist. Attorney's Off., 308 A.D.2d 278, 285, 763 N.Y.S.2d 635, quoting Imbler, 424 U.S. at 431, 96 S.Ct. 984; see Cunningham v. State of New York, 71 A.D.2d 181, 182, 422 N.Y.S.2d 497). "Thus, a prosecutor's conduct in preparing for those functions may be absolutely immune, but acts of investigation are not." Kirchner v. Cty. of Niagara, 107 A.D.3d 1620, 1623, 969 N.Y.S.2d 277, 282 (2013) (see also Buckley, 509 U.S. at 270, 113 S.Ct. 2606). Prosecutors are afforded only qualified immunity when acting in an investigative capacity, such as advising the police or performing investigative work in order to

11

decide whether an arrest should be made. Kirchner, 107 A.D.3d at 1623 (*see also* Buckley, at 271-275; Johnson, 308 A.D.2d at 285, 763 N.Y.S.2d 635; Claude H. v. County of Oneida, 214 A.D.2d 964, 965, 626 N.Y.S.2d; Burns v. Reed, 500 U.S. 478, 493–495, 111 S.Ct. 1934, 114 L.Ed.2d 547).

24.     In Kirchner, the court rejected the argument for absolute immunity in a case where a father brought malicious prosecution action after charged with criminal misconduct. Kirchner, 107 A.D.3d at 1620. The court found that the Caldwell was not "simply evaluating the evidence assembled" but instead had coached or encouraged a witness to lie about the cause of death and fabricated findings and gave them to police. Id. at 1623-24. The court found these to be investigative functions which are not protected by absolute immunity. Id. Similarly in the case at hand, Defendant, Joseph Ponzi was hired to ensure Ms. Smith maintained her story, and even testified that it was part of his job to hold reluctant witnesses to their story. (Amended Complaint ¶ 33). Additionally, Defendant, Joseph Ponzi visited the Hamilton home and approached Plaintiffs with statements regarding Derrick Hamilton's guilt and dangerousness. (Id. at 15). These are the exact conduct that the court in Kirchner found to have found to be investigative and therefore not afforded absolute privilege. Kirchner, 107 A.D.3d at 1623-24. Thus, it must be found that Defendant, Joseph Ponzi, is not entitled to absolute immunity, and can be afforded only qualified immunity. And as discussed in Part II, supra, Defendant is not entitled to qualified immunity on Plaintiffs' claims for violation of their right to familial associations.

25.     Despite Defendant's claims that Ponzi's actions were "taken during course of employment" and that locating a suspect is "performing functions closely related to the judicial process", the Plaintiffs alleged facts that the Defendant was not in fact preforming closely related judicial process, but was instead acting in an investigative capacity. (D.Mol at 14-15)(Amended

Complaint ¶¶ 15, 33, 39,  42, 43). Thus, Defendant, Joseph Ponzi is not entitled to absolute immunity.

## PART IV

THE STATE LAW CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS NOT BARRED BY STATUTES OF LIMITATIONS AS IT WOULD NOT BE IN THE INTEREST OF JUSTICE AND THE STATE LAW CLAIM FOR NEGLIGENT INFLICTION OF EMOITIONAL DISTRESS IS NOT BARRED BY STATUTES OF LIMITATIONS AS IT WAS FILED TIMELY PER THE RELATION-BACK DOCTRINE

### a. Intentional Infliction of Emotional Distress

26.     Federal Courts apply state statute of limitations to state law claims. Young v. Suffolk County, 705 F.Supp.2d 183, 211 (E.D.N.Y. 2010). Intentional Infliction of Emotional Distress claims are subject to a one-year statute of limitations under New York law. Id. at 211.

27.     It has been the general policy of the courts to permit actions to be determined by a trial on the merits whenever possible. (Murray v. Matusiak, 247 A.D.2d 303, 669 N.Y.S.2d 278 (1st Dept. 1998), Chamber Industries, Inc. v. 71 Grand Liquor Corp., 128 A.D.2d825, 513 N.Y.S.2d 747 (2d Dept. 1987); Pisano v. Tupper, 177 A.D.2d 886, 576 N.Y.S.2d 646 (3d Dept. 1991); Constable v. Matie, 145 A.D.2d 987, 536 N.Y.S.2d 357 (4th Dept. 1988). Toward that end, and for that reason, a liberal policy has been adopted with respect to opening default judgments so that the parties may have their day in court. Braverman v. Monterey Operating Corp., 246 A.D. 735, 283 N.Y.S. 874 (2d Dept. 1935). Since an opportunity to defend on the merits is in the interest of justice, it should be favored in determining a motion to vacate a default judgment. Schupak, Rosenfeld and Fichsbein v. Campanelli Industries, Inc., 51 A.D.2d 699, 380 N.Y.S.2d 3 (1st Dept. 1976); Rawson v. Austin, 49 A.D.2d 803, 373 N.Y.S.2d 241 (4th Dept. 1975).

28.     Here, the Plaintiffs' original Complaint was filed on November 02, 2017. See **Exhibit 'B'**. This claim accrued on January 9, 2015, when Derrick Hamilton's conviction was vacated and

13

the indictment against him was dismissed. (Amended Complaint ¶¶52-53). However, though the original Complaint was filed after the one-year statute of limitations, it is within the interest of justice that the Court find this statute of limitations tolled until the date of the original Complaint.

### b. Negligent Infliction of Emotional Distress

29.     Federal Courts apply state statute of limitations to state law claims. <u>Young</u>, 705 F.Supp.2d at 211 (E.D.N.Y. 2010). Negligent Infliction of Emotional Distress claims are subject to a three-year statute of limitations under New York law. <u>Dawkins v. Williams</u>, 413 F.Supp.2d 161, 177 (N.D.N.Y. 2006).

30.     Pursuant to <u>CPLR 203(f)</u>, the "relation-back" statute:

> claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.

(<u>CPLR 203</u> [f]; see also <u>Giambrone v. Kings Harbor Multicare Ctr.</u>, 104 A.D.3d 546, 548, 961 N.Y.S.2d 157 [1st Dept.2013] [making clear that the "salient inquiry" in deciding whether an otherwise untimely claim in an amended pleading relates back to a timely commenced action "is not whether defendant had notice of the claim, but whether, as the statute provides, the original pleading gives 'notice of the transactions [or] occurrences ... to be proved pursuant to the amended pleading' "] [emphasis added] ).  The relation-back doctrine is "[a]imed at liberalizing the strict, formalistic pleading requirements of the [nineteenth] century, while at the same time respecting the important policies inherent in statutory repose," and "enables a plaintiff to correct a pleading error--by adding either a new claim or a new party--after the statutory limitations period has expired" (<u>Buran v. Coupal</u>, 87 N.Y.2d 173, 177, 638 N.Y.S.2d 405, 661 N.E.2d 978

14

[1995] [citations omitted] ). "The Court of Appeals has recognized that a more relaxed standard applies where a plaintiff seeks to use the relation-back doctrine by adding a new claim against a defendant who is already a party to litigation as opposed to adding a new defendant" (Buran, 87 N.Y.2d at 178, 638 N.Y.S.2d 405, 661 N.E.2d 978 ["allowing the relation back of amendments adding new defendants implicates more seriously the( ) policy concerns (underlying statutes of limitation) than simply the relation back of new causes of action since, in the latter situation, the defendant is already before the court"]; see also Duffy v. Horton Mem. Hosp., 66 N.Y.2d 473, 477, 497 N.Y.S.2d 890, 488 N.E.2d 820 [1985]. O'Halloran v. Metropolitan Transp. Authority, 154 A.D.3d 83, 87, 60 N.Y.S.3d 128, 131 (N.Y. App. Div. 2017). The Court of Appeals stated the considerations in determining whether a proposed amended complaint that contains an untimely claim against a defendant already a party to the litigation should be determined by a two part test: (1) whether the original complaint gave the defendant notice of the transactions or occurrences at issue and (2) whether there would be undue prejudice to the defendant if the amendment and relation back are permitted O'Halloran, 60 N.Y.S.3d at 131–32 (N.Y. App. Div. 2017).

31.     Here, the Plaintiffs' original Complaint was filed on November 02, 2017. See **Exhibit 'B'**. This claim accrued on January 9, 2015, when Derrick Hamilton's conviction was vacated and the indictment against him was dismissed. (Amended Complaint ¶¶52-53). Given the three-year statute of limitations, as stated in Dawkins, the statute of limitations would expire on January 9, 2018. Thus, the original Complaint was filed well within the three-year statute of limitations.

32.     Applying the two-part test in O'Halloran, Plaintiffs original Complaint gave the Defendants notice of the transactions or occurrences at issue and there would be no undue prejudice to the Defendants if the amendment and relation back are permitted. The original Complaint alleges

15

the occurrences underlying the new claim and the general treatment of the Plaintiffs, all of which occurred on the same dates and in the same instances as alleged in the original complaint. Additionally, Defendants will not be unduly prejudiced or surprised by allowing the Amended Complaint to add new claims, because they have not been ""hindered in the preparation of [their] case or ... prevented from taking some measure in support of [their] position" (Jacobson v. McNeil Consumer & Specialty Pharms., 68 A.D.3d 652, 654–655, 891 N.Y.S.2d 387 [1st Dept.2009] [internal quotation marks omitted]; see also Buran, 87 N.Y.2d at 178, 638 N.Y.S.2d 405, 661 N.E.2d 978). "Prejudice does not occur simply because a defendant is exposed to greater liability or because a defendant has to expend additional time preparing its case" (Jacobson, 68 A.D.3d at 654, 891 N.Y.S.2d 387 [citation omitted] ).

33.    Therefore, the Plaintiffs claims of Negligent Infliction of Emotional Distress are not barred by statute of limitations because they are subject to the relation-back doctrine.

## **PART V**

### PLAINTIFF HAS SUFFICIENTLY PLEAD THE ELEMENTS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

34.    Under CPLR §3211(a)(7), defendants may move to dismiss for failure to state a cause of action. However, the court, "must accept the allegations of the complaint as true and ignore the affidavits submitted by defendants," because only the face of the pleadings is considered on a motion to dismiss. Valentino v. County of Tompkins, 284 A.D.2d 898 (3rd Dept. 2001); see also Henbest & Morrisy v. W.H.Ins. Agency, 259 A.D.2d 829, 830, 686 N.Y.S.2d 207; Rovello v. Orofino Realty Co., 40 N.Y.2d 633, 635-36, 389 N.Y.S.2d 314, 357 N.E.2d 970.

35.    Presently, the Plaintiffs' Amended Complaint on its face properly pleads the elements of Intentional Infliction of Emotional Distress.

16

36.     To recover for intentional infliction of emotional distress, a Plaintiff must prove "(1) extreme and outrageous conduct; the intent to cause, or disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress."(Klein v. Metropolitan Child Servs., Inc., 100 A.D.3d 708, 710, 954 N.Y.S.2d 559; see Marmelstein v. Kehillat New Hempstead: Rav Aron Jofen Community Synagogue, 11 N.Y.3d 15, 22–23, 862 N.Y.S.2d 311, 892 N.E.2d 375; Howell v. New York Post Co., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699; Taggart v. Costabile, 131 A.D.3d 243, 249–250, 14 N.Y.S.3d 388).

37.     Plaintiffs set forth multiple times in their Amended Complaint the elements of Intentional Infliction of Emotional Distress. (Amended Complaint ¶¶ 12,13, 30, 31, 32, 33, 34, 41, 42, 43, 44, 47, 54, 55).

38.     Here, Defendants engaged in a campaign of deception in order to incarcerate Derrick Hamilton as well as keep his wife and children from knowing the truth. Defendant's conduct was purposefully directed at the relationship of Brittany Hamilton, Richetta Greene, and Davone Greene with their husband and father, Derrick Hamilton and caused them to doubt his innocence. Had Plaintiffs' known the true nature of the Defendants' conduct, as described above, they would have been incentivized to assist in Derrick Hamilton's efforts to prove his innocence, rather than the estrangement of their father and husband. (Amended Complaint ¶¶15, 22-26, 55).

39.     As discussed above in Part I and II, supra, the Defendants did act intentionally toward the Plaintiffs in actively spreading misinformation in pursuant of creating hostility and mistrust between the family members of Derrick Hamilton. The Defendants intentionally approached the family one two separate occasions, not in effort to ascertain the whereabouts of Derrick Hamilton, but to create a hostility and animus toward him from his family members. Using language, as mentioned above, to frame Derrick Hamilton as a killer and dangerous. (Amended Complaint ¶15). This was an

17

intentional scheme in order to place the seed of doubt in the Plaintiffs' minds of the innocence of Derrick Hamilton. As such, the Defendants' argument that his conduct was not intentionally directed at Plaintiffs is inherently flawed. Furthermore, Defendants conveniently ignores that fact that an intentional act may also be defined as a "disregard of a substantial likelihood of causing, severe emotional distress." Klein, 100 A.D.3d at 710. Certainly, in this case, even if Defendants' actions were not considered intentional, there is no doubt that his actions could be defined as indifferent as noted in the second element.

40.     A claim for intentional infliction of emotional distress requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[.]" Chanko v. American Broadcasting Cos., Inc., 27 N.Y.3d 46, 56 (N.Y. 2016)(citations and internal quotation marks omitted). "The conduct must also be intentionally directed at the plaintiff and lack any reasonable justification." Martin v. Citibank, N.A., 762 F.2d 212, 220 (2d Cir. 1985). As alleged in the Amended Complaint, the Defendants visited the home not only in an effort to find Derrick Hamilton, but also to spread hostility and mistrust between the family members. (Amended Complaint ¶¶14-16, 35-36). The Defendants used very forceful, incorrect, and provoking language in order to create a mistrust between the Plaintiffs and their father and husband, just as in Patel. This use of language and intentional conduct certainly rises to the meeting the standards set forth above.

41.     While Defendants have put forth case law that stands for the assertion that public policy bars claims for intentional infliction of emotional distress against a government entity (See e.g., Rivera v. City of N.Y., 392 F.Supp.2d 644, 657 (S.D.N.Y. 2005)), in none of the cases did the conduct arise to outrageous, unlike here. The act of intentionally engaging in a misinformation campaign designed to create hostility and mistrust in Derrick Hamilton certainly arises to the level of

18

outrageous conduct, and as such public policy should not bar the claim of intentional infliction of emotional distress for the Plaintiffs. (Amended Complaint ¶¶ 12,13, 30, 31, 32, 33, 34, 41, 42, 43, 44, 47, 54, 55).

42.     In considering this claim, it is improper for the Court to prematurely grant a motion to dismiss prior to discovery. Therefore, the Court should look only to the face of the Plaintiffs' pleading and find they sufficiently pled a cause of action for Intentional Infliction of Emotional Distress.

**PART VI**

PLAINTIFFS HAVE SUFFICIENTLY PLEAD THE ELEMENTS OF NEGLIGENT
INFLICTION OF EMOTIONAL DISTRESS

43.     Under CPLR §3211(a)(7), defendants may move to dismiss for failure to state a cause of action. However, the court, "must accept the allegations of the complaint as true and ignore the affidavits submitted by defendants," because only the face of the pleadings is considered on a motion to dismiss. Valentino v. County of Tompkins, 284 A.D.2d 898 (3rd Dept. 2001); see also Henbest & Morrisy v. W.H.Ins. Agency, 259 A.D.2d 829, 830, 686 N.Y.S.2d 207; Rovello v. Orofino Realty Co., 40 N.Y.2d 633, 635-36, 389 N.Y.S.2d 314, 357 N.E.2d 970.

44.     Presently, the Plaintiffs' Amended Complaint on its face properly pleads the elements of Negligent Infliction of Emotional Distress.

45.     To recover for Negligent Infliction of Emotional Distress, "New York [] recognizes a cause of action in cases where there is 'an especial likelihood of genuine and serious mental distress, arising from…special circumstances, which serves as a guarantee that the claim is not spurious." Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000)(quoting Johnson v. State, 37 N.Y.2d 378, 372 N.Y.S.2d 638, 642, 334 N.E.2d 590 (1975). Many such cases involve the transmission of false

19

information leading to severe emotional distress, and which provide an assurance of genuineness. See e.g., id.; <u>Ferrara v. Galluchio</u>, 5 N.Y.2d 16, 21 (1958). Here, Plaintiffs were told their father was a murderer and a dangerous man. (Amended Complaint ¶¶14-16). While Defendants no doubt acted intentionally against Derrick Hamilton, his actions toward Plaintiffs were, according to them, unintentional. Not unlike many negligent infliction of emotional distress cases where a party has been negligently misdiagnosed, Defendant's intentionally false proclamations as to Derrick Hamilton's guilt was at the very least a negligent act which caused none other than Plaintiffs to suffer dire consequences which affected every aspect of their loves, including distress and loss of familial relations. (Amended Complaint ¶¶22-26, 55).

46.    In <u>Johnson</u>, a claim by a woman who was negligently misinformed by a hospital that her mother had died was upheld by the Court of Appeals. The court held that, in that situation, "recovery for emotional harm to one subjected directly to the tortious act may not be disallowed so long as the evidence is sufficient to show causation and substantiality of the harm suffered, together with a 'guarantee of genuineness[.]'" <u>Johnson</u>, 372 N.Y.S.2d at 643. The Court of Appeals in <u>Johnson</u> explained:

> While for one to be held liable in negligence he need not foresee novel or extraordinary consequences, it is enough that he be aware of the risk of danger. The consequential funeral expenditures and the serious psychological impact on claimant of a false message informing her of the death of her mother, were all within the 'orbit of the danger' and therefore within the 'orbit of the duty' for the breach of which a wrongdoer may be held liable (<u>Palsgraf v. Long Is. R.R. Co., 248 N.Y. 339, 343, 162 N.E. 99, 100).</u> Thus, the hospital owed claimant a duty to refrain from such conduct, a duty breached when it negligently sent the false message. The false message and the events flowing from its receipt were the proximate cause of claimant's emotional harm. Hence, claimant is entitled to recover for that harm, especially if supported by objective manifestations of that harm.

Johnson v. State, 37 N.Y.2d 378, 382-83 (1975). Plaintiffs here were within the innermost "orbit of danger" of Defendants' conduct (Derrick Hamilton himself being at the very center of the gravity of such conduct), and therefore well within the "orbit of duty" described in Johnson.

47.     "While physical injury is not a necessary element of a cause of action to recover damages for negligent infliction of emotional distress, such a cause of action must generally be premised upon conduct that unreasonably endangers a plaintiff's physical safety or causes the plaintiff to fear for his or her own safety[.]" Perry v. Valley Cottage Animal Hosp., 261 A.D.2d 522, 522-23 (2d Dept. 1999)(citation omitted). The Plaintiffs clearly alleged in their Amended Complaint that Defendant stated "[y]ou should know what type of guy you are dealing with, he is a murderer, he is dangerous, he killed this guy. This is not Derrick's first brush with the law." (Amended Complaint ¶15). This conduct was intended to immediately cause the Plaintiffs to fear for their own safety, and as such satisfied the test set forth in Perry. "Defendants owed a duty of care to the Plaintiffs to act with reasonable care and breached that duty when they wrongfully arrested and imprisoned Derrick Hamilton and lied to plaintiffs regarding his guilt, thereby denying the Plaintiffs of the relationship with their husband and father. In denying the Plaintiffs a relationship with Derrick Hamilton, the Plaintiffs suffered and continue to suffer severe emotional distress in the form of countless sleepless nights, night terrors, feelings of helplessness, suicide attempts, bullying, as well as being shunned by society as the wife and children of a murderer." (Amended Complaint Amended Complaint ¶¶ 80).

48.     In considering this claim, it is improper for the Court to prematurely grant a motion to dismiss prior to discovery. Therefore, the Court should look only to the face of the Plaintiffs' pleading and find they sufficiently pled a cause of action for Negligent Infliction of Emotional Distress. (Amended Complaint Amended Complaint ¶¶ 12,13,15, 30, 31, 32, 33, 34, 41, 42, 43, 44, 47, 54, 55, 80, 81).

## PART VII

## PLAINTIFFS' CLAIM FOR NEGLIGENT HIRING, TRAINING, AND SUPERVISION SHOULD NOT BE DISMISSED

49.     New York courts have made clear that the tort of negligent hiring and retention "applies equally to municipalities and private employers." Gonzalez v. City of New York, 133 A.D.3d 65, 67 (1st Dept. 2015). Unlike the theory of respondeat superior, "under the theory of negligenct hiring and retention, an employer may be liable for the acts of an employee acting outside the scope of his or her employment." Id. Here, there is little doubt the Defendants campaign of deception, outlined in the Amended Complaint, was beyond the scope of their employment, and the City's negligent hiring, supervision and decision to retain said officers in light of their actions is truly negligent. (Amended Complaint ¶¶ 12,13, 15, 30, 31, 20, 33, 34, 41, 42, 43, 44, 47, 54, 55). Each year, more and more victim's of co-defendant, Det. Scarcella, are released after decades of wrongful imprisonment, often having served years of solitary confinement. Id. at 51 (The past two years, substantial allegations about the investigative methods of Louis Scarcella have been uncovered. As a result of what can only be called corrupt practices by Scarcella, over 5 murder convictions have been overturned and over 70 convictions are being reviewed by the Kings County District Attorneys Office.) The Given free reign by the City, along with the help of Det. Scarcella, the Defendants  advanced a self-serving, nefarious and malevolent plot to brighten their stars in purporting to "solve" high profile crimes by framing innocent men. Id.at 54 (Defendants' systematic misconduct caused Plaintiffs to suffer a tragic deprivation of a husband and father who will never be the same. Defendants took Derrick Hamilton away from Plaintiffs, framed him for a murder he not commit, and locked him away for over 23 years, dramatically altering the course of Plaintiffs' loves and who they each are as human beings, all in violation of their-well established constitutional rights to familial association.)

22

50.      Furthermore, Defendants propensity for such illegal conduct is outlined in the Amended Complaint which details a number of similar acts by them. (Amended Complaint (¶¶ 12,13, 15 (…Detective Frank DeLouisa and Investigator Joseph Ponzi further visited the Hamilton home and approached Richetta Greene with statements further indicating that Derrick Hamilton was a murderer, a threat, and could not be trusted), 30, 31 (Another individual named Taseem Douglas was also at the scene of the shooting Det. De Louisa did not attempt to obtain a statement from Mr. Douglas), 32 (Although Ms. Smith did not witness the shooting, DeLouisa brought her to an NYPD precinct), 33, 34 (Through the coercion of Ms. Smith, she gave perjured testimony to the grand jury. This perjured testimony and false identification caused Mr. Hamilton to be indicted and arrested without parole), 41, 42 (Since DeLouisa, Scarcella and Ponzi coerced the statement and testimony from Ms. Smith, the prosecutor was never advised about her statement at the scene that she did not witness the shooting), 43 (…There was no physical evidence, ballistic evidence, corroborating evidence or any other basis for the conviction other than the fabricated testimony coerced by DeLouisa, Scarcella and Ponzi), 44, 47, 54, 55). Yet, because the City of New York knew these deceptive and illegal practices were going on, they are liable to Plaintiffs "because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the NYPD with regard to their duties, and for negligent retention of same.  Thus, the Plaintiff's claim for Negligent Hiring, Training and/or Supervision should not be dismissed.

## PART VIII

### COURT SHOULD NOT DECLINE TO EXERCISE SUPPLEMENTAL JURISDICITON AS TO THE STATE LAW CLAIMS

23

51.     While it is true that 28 U.S.C. § 1367(c) authorizes courts to "decline to exercise supplemental jurisdiction" over state law claims if "the district court has dismissed all claims over which it has original jurisdiction[,]" it is within the Court's discretion to do so. <u>Valenci v. Sung Lee</u>, 316 F.3d 299, 305 (2d Cir. 2003). However, this would only be available should the Court dismiss the Plaintiffs' federal claims pursuant to 42 U.S.C. §1983, which as argued in Part I and Part II, *supra,* the Court should decline to dismiss. As such, the Court should not decline supplemental jurisdiction over the state law claims, as the federal claims should not be dismissed.

<u>CONCLUSION</u>

52.     WHEREFORE, affirmant respectfully requests that the within motion be in all respects be denied, together with such other, further, and different relief as to this Court seems just and proper.

DATED:     New York, New York
           April 10, 2020


                                    _/s/_____
                                    CARY LONDON, ESQ

24